IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**RENISA L. BRUMFIELD AND LILLIE SMITH,**
Individually and as Wrongful Death Beneficiaries
and Representatives of the Heirs-at-Law of
THEODORE SMITH, Deceased; and the ESTATE
OF THEODORE SMITH, by and through its duly
Appointed Administratrix, RENISA L. BRUMFIELD                          PLAINTIFFS

VERSUS                                              CIVIL ACTION NO. 2:04cv291-KS-JMR

**CHRIS BRUMFIELD, Individually and in his Official
Capacity as an Officer of the City of Columbia,
Mississippi Police Department, JIMMY STRINGER,
Individually and in His Official Capacity as the Chief
of Police of the City of Columbia, Mississippi Police
Department, CITY OF COLUMBIA, MISSISSIPPI,
CHARLES 'BUMPER" BRYANT, SOLOMON RAY
HOLLINS, CLARENCE LOUGE, DELANO 'BUTCH'
THORNHILL, AND JOHN DOES ONE AND TWO,**
Individually and in their Official Capacities as Deputy
Sheriffs of Marion County, Mississippi, RICHARD
'RIP' STRINGER, Individually and His Official Capacity as
Sheriff of Marion County, Mississippi and
MARION COUNTY, MISSISSIPPI                                             DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on Motions for Summary Judgment **[#23 and #25]** based on qualified immunity filed on behalf of Charles 'Bumper" Bryant, Solomon Ray Hollins, Clarence Louge, Delano 'Butch' Thornhill and Sheriff Richard Stringer in their individual capacities. The court, having reviewed the motions, the responses, the briefs of counsel, the pleadings and exhibits on file and being fully advised in the premises

finds that the motions should be granted. The court specifically finds as follows:

## **FACTUAL BACKGROUND**

This suit arises from the death by suicide of the plaintiffs' decedent, Theodore Smith ("Smith") who had been arrested by Marion County Deputy Sheriff Charles "Bumper" Bryant after Bryant had been alerted that Smith was driving an automobile erratically. Smith was stopped by Bryant who smelled a strong odor of alcohol about him. Bryant administered a field sobriety test to Smith which he (Smith) failed. Smith was arrested and transported to the Marion County Jail for a Breathalyzer test administered by Columbia Police Officer Chris Brumfield, which showed a blood alcohol content of .321%, three times the legal limit. Smith's grandmother, plaintiff Lillie Smith, was with Smith in the car at the time of the stop and was transported home by defendant Deputy Clarence Louge, who was also present at the scene.

Smith was taken to the Marion County Jail and booked on a charge of felony DUI at approximately 6:00 P.M. on January 2, 2002. At approximately 1:20 A.M. on the morning of January 3, Smith was discovered lying prone on his face by a Trusty who called for help. When deputies arrived on the scene, it was apparent that Smith had hanged himself with a shoelace. Smith was pronounced dead a short time later at the Marion General Hospital.

The plaintiffs have filed this 28 U.S.C. § 1983 action against Sheriff Richard Stringer, and Deputies Bryant, Hollins, Thornhill and Louge in their individual and official

capacities.[1]  According to the plaintiffs, the defendants knew that Smith had an acute drinking problem, that he was in need of medical attention, and that he was a danger to himself.  The plaintiffs charge that the defendants acted with deliberate indifference to Smith's "obvious suicidal tendencies" and that the defendants deliberately failed to protect Smith from the "obvious likelihood of self-inflicted harm."  Specifically, the plaintiffs charge that Bryant and Louge saw Smith at the time of the arrest and were, or should have been aware, of Smith's need for medical attention.  Additionally, the plaintiffs contend that Louge had arrested Smith for DUIs on other occasions and thus knew that Smith's condition needed medical attention and monitoring.  The plaintiffs contend that Thornhill and Hollins were the jailers on duty the night Smith died and that they were aware of his serious condition and that they failed to properly monitor him.

The plaintiffs allege that Sheriff Stringer failed to implement and enforce suitable policies and procedures for the detection and prevention of suicide and for accommodating the medical and psychiatric needs of pretrial detainees.  They also assert that Stringer failed to implement adequate hiring, firing, training, staffing and supervisory procedures.  These five defendants have moved for summary judgment on the claims asserted against them in their individual capacities on the basis of qualified immunity.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment

---

[1] Individual capacity claims against Columbia Chief of Police Chris Stringer and Columbia Officer Chris Brumfield have already been dismissed.

where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." Id. "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of

law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence'

demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

### ***QUALIFIED IMMUNITY***

The Fifth Circuit has held that "government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir. 1998)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).

Qualified immunity applies only to defendants sued in their individual capacities and protects the individual defendant not just from liability but also from trial. *See*

*Roberts v. City of Shreveport,* 397 F.3d 287, 291 (5th Cir. 2005).  An officer's entitlement to qualified immunity is a question of law for decision by the court as early as possible in the proceedings, "even before discovery."  *Hare v. City of Corinth,* 135 F.3d 320, 325 (5th Cir. 1998)("*Hare II*").

Under the two step analysis employed by the Fifth Circuit in reviewing claims wherein qualified immunity has been asserted, the court must first determine "whether the plaintiff has asserted the violation of a clearly established constitutional right.  If so, the court decides whether the defendant's conduct was objectively reasonable," in light of the alleged violation of the rights based on law in effect at the time of the incident. *Sorenson*, 134 F.3d at 327 *(quoting Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir. 1997)(applying the two-prong test of *Siegert v. Gilley*, 500 U.S. 226, 231-32, 111 S. Ct. 1789, 1792-93, 114 L. Ed. 2d 277 (1991)).

"The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law."  *Hare*, 135 F.3d at 326 (*citing Pierce v. Smith*, 117 F.3d 866 (5th Cir.1997)).  However, the trial courts have been instructed that  "the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)(*quoting Malley v. Briggs*, 475 U.S. 335, 343, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

## ANALYSIS

The Fifth Circuit has held that pre-trial detainees, such as Smith, have a constitutional right to adequate protection from known suicidal impulses, thus, the plaintiffs in this case meet the first requirement, *i.e.*, that they have alleged the violation of a clearly established constitutional right. *See Rhyne v. Henderson County,* 973 F.2d 386, 391 (5th Cir. 1992). As the Fifth Circuit has held, "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Hare v. City of Corinth*, 74 F.3d 633, 650, (5th Cir.1996)(*en banc*)("*Hare I*").

The second part of the equation is more problematic in that there seems to be some confusion among the parties as to the application of the above cited standards and how they apply to a qualified immunity motion for summary judgment. To test their objective reasonableness, the defendants seem to assert that the court should apply the subjective standard of deliberate indifference employed in *Hare I*. "[w]e conclude that a state jail official's constitutional liability to pretrial detainees for episodic acts or omissions should be measured by a standard of subjective deliberate indifference as enunciated by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)". 74 F.3d at 643. Under that standard, it "is not whether the jail officers 'knew or should have known,' but whether they had gained actual knowledge of the substantial risk of suicide and responded with deliberate indifference." *Id.*

The plaintiffs counter that it is not the subjective standard which applies but instead whether the officers acted with objective reasonableness to the alleged known suicide risk posed by Smith.  To support their allegation that the defendants knew Smith was a suicide risk the plaintiffs allege the following: that Deputy Louge knew Smith and his propensities to get drunk because he had arrested him before; that Smith was distraught and had asked Louge to drop an earlier DUI charge on the night before Smith committed suicide; that Deputy Bryant observed Smith at the time of the arrest and was well aware that Smith was very intoxicated; and that Deputies Hollins and Thornhill were aware of Smith's highly intoxicated state and failed to monitor him properly and instead allowed a Trusty to monitor him.  The plaintiffs also allege that the lack of appropriate policies, procedures, training, etc., as set forth above, by Sheriff Richard Stringer was not objectively reasonable.

First, the court notes that the Fifth Circuit has clearly held that the second step in a correct analysis of a motion for summary judgment on qualified immunity is whether the officers's conduct was objectively reasonable in light of the clearly established constitutional rights of the decedent at the time of the incident.  However, part of the equation in deciding whether the defendants in this case acted with objective reasonableness is to make an initial determination of whether the decedent's constitutional right recognized above was violated.  This analysis is informed by the law in effect at the time of the incident.  The law which governs the standard of care owed to a pretrial detainee regarding suicide is whether the defendants "had gained actual knowledge of the substantial risk of suicide [of Smith] and responded with deliberate indifference."  *Hare*, 74 F.3d at 650.

The evidence before the court does not support the plaintiffs' contentions that the defendants did in fact have knowledge of Smith's suicidal tendencies. The plaintiffs ask the court to conclude that the defendants were aware of Smith's propensity to commit suicide based primarily on the fact that Smith was very intoxicated and distraught at receiving his third DUI, a felony. In the affidavits and testimony of all of the defendants presented, each defendant denies having any actual knowledge that Smith was a suicide risk. They had dealt with Smith on a number of prior occasions when he had been arrested for being drunk and he had never exhibited any indication that he was a suicide risk. Being drunk and distraught simply does not rise to the level of actual knowledge that one is a risk to kill himself.

The plaintiffs have provided nothing more than anecdotal evidence that Smith was a suicide risk. Smith's Grandmother was at the scene of the arrest and there is no evidence that she considered him at risk to kill himself let alone that she informed anyone else of this. There is no evidence that Smith seriously, or otherwise, threatened to kill himself after he was arrested and incarcerated. There is no evidence in the record that Smith had ever threatened to take his own life.

The defendants, on the occasion in question, did not violate the right of Smith to be free from harm and to be protected from danger based on the law that was in existence at the time of the incident in question. Each of the defendant deputies' conduct was objectively reasonable in light of all the facts presented.

As to Sheriff Stringer, under § 1983, there can be no liability based on the doctrine of *respondeat superior*. *See Monell v. Dept. of Social Services*, 436 U.S.

658, 690, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978); and *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1303 (5th Cir. 1995). There must be some connection between the actions of Sheriff Stringer and the alleged constitutional violation. *See Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996); and *Hinshaw v. Doffer*, 785 F.2d 1260 (5th Cir. 1986). "Supervisory officials may be liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff[s'] injury." *Baker* 75 F.3d at 199, (*quoting Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992)).

There is no evidence in the record that Sheriff Stringer directly participated in the arrest and incarceration of Smith or that he even knew about it. Further, the Fifth Circuit has characterized jail suicide cases as involving episodic acts or omissions involving one or more officials. *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997)(*citing Hare,* 74 F.3d at 645). In such cases, the court does not reach the issue of "the policy, custom or rule (or lack thereof) . . . that permitted or caused the act or omission" unless a plaintiff first establishes that a defendant's challenged conduct "was done with subjective deliberate indifference to the detainee's constitutional rights." *Sibley v. Lemaire,* 184 F.3d 481, 487-88 (5th Cir. 1999); *Scott v. Moore,* 114 F.3d 51, 54 (5th Cir. 1997). Once again, the plaintiffs' proof fails as to this critical evidence regarding the individual liability of Sheriff Stringer.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motions for Summary Judgment **[#23 and #25]** based on qualified immunity filed on behalf of the individual

defendants, Charles 'Bumper" Bryant, Solomon Ray Hollins, Clarence Louge, Delano 'Butch' Thornhill and Sheriff Richard Stringer are granted and the claims filed by the plaintiffs against these defendants in their individual capacities are dismissed with prejudice.

    IT IS FURTHER ORDERED AND ADJUDGED that the stay previously entered in this matter is lifted and that parties shall contact the Magistrate Judge within ten days of this order for the entry of a new scheduling order.

    IT IS FURTHER ORDERED AND ADJUDGED that any other pending motion in this matter is dismissed as moot.

    A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

    SO ORDERED AND ADJUDGED this the 19th day of July, 2006.

    s/ *Keith Starrett*
    UNITED STATES DISTRICT JUDGE