IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

RENISA L. BRUMFIELD, Individually and
as Wrongful Death Beneficiary and Representative
of the Heirs-at-Law of THEODORE SMITH, Deceased;
and the ESTATE OF THEODORE SMITH, by and
through its duly Appointed Administratrix,
RENISA L. BRUMFIELD                                                              PLAINTIFFS

VERSUS                                         CIVIL ACTION NO. 2:04cv291KS-MTP

CHARLES 'BUMPER" BRYANT, SOLOMON RAY
HOLLINS, CLARENCE LOUGE, DELANO 'BUTCH'
THORNHILL, AND JOHN DOES ONE AND TWO,
In their Official Capacities as Deputy Sheriffs of
Marion County, Mississippi, RICHARD'RIP' STRINGER,
In His Official Capacity as Sheriff of Marion County,
Mississippi and MARION COUNTY, MISSISSIPPI              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on a Motion for Summary Judgment **[#145]** filed on behalf of the plaintiffs and on a Cross-Motion for Summary Judgment **[#147]** filed on behalf of Charles 'Bumper" Bryant, Solomon Ray Hollins, Clarence Louge, Delano 'Butch' Thornhill and Sheriff Richard Stringer in their official capacities and Marion County, Mississippi.  The court, having reviewed the motions, the responses, the briefs of counsel, the pleadings and exhibits on file and being fully advised in the premises finds that both motions should be denied.

The court has jurisdiction over the plaintiffs' federal claims under 28 U.S.C.

§§ 1331 and 1343(a).  Venue is proper herein pursuant to 28 U.S.C. § 1391(b).  The court specifically finds as follows:

## FACTUAL BACKGROUND

This suit arises from the death by suicide of the plaintiffs' decedent, Theodore Smith ("Smith") who had been arrested by Marion County Deputy Sheriff Charles "Bumper" Bryant after Bryant had been alerted that Smith was driving an automobile erratically.  Smith was stopped by Bryant who smelled a strong odor of alcohol about him.  Bryant administered a field sobriety test to Smith which he (Smith) failed.  Smith was arrested and transported to the Marion County Jail for a Breathalyzer test administered by Columbia Police Officer Chris Brumfield, which showed a blood alcohol content of .321%, more than three times the legal limit.  Smith's grandmother, Lillie Smith,[1] was with Smith in the car at the time of the stop and was transported home by defendant Deputy Clarence Louge, who was also present at the scene.

Smith was taken to the Marion County Jail and booked on a charge of felony DUI at approximately 5:45 P.M. on January 2, 2002.  Smith's belt, jacket, hat and watch were removed prior to his placement in the "drunk tank" at the old Marion County Jail.  The shoelaces were not removed from his sneakers, however.  At approximately 1:15 A.M. on the morning of January 3, Smith was discovered lying prone on his face by a trusty who called for help.  When deputies arrived on the scene, it was apparent that Smith had hung himself with a shoelace, which was still tied tightly around his neck.

---

[1] Lillie Smith was originally a named plaintiff in the case but entered a stipulation of dismissal without prejudice on October 23, 2006.

Upon discovering Smith, the deputies began taking pictures of Smith and securing the scene.  An ambulance was called and when the EMTs arrived some fifteen to twenty minutes later, Smith was still lying prone with the shoelace around his neck. The EMTs immediately cut the string and attempted to resuscitate Smith and then transported him to the Marion General Hospital where further resuscitation efforts failed and Smith was pronounced dead.

The plaintiffs have filed this 28 U.S.C. § 1983 action against Sheriff Richard Stringer, and Deputies Bryant, Hollins, Thornhill and Louge in their official capacities,[2] and against Marion County.  According to the plaintiffs, the defendants knew that Smith had an acute drinking problem, that he was in need of medical attention, and that he was a danger to himself. The plaintiffs charge that the defendants acted with deliberate indifference to Smith's "obvious suicidal tendencies" and that the defendants deliberately failed to protect Smith from the "obvious likelihood of self-inflicted harm." Specifically, the plaintiffs charge that Bryant and Louge saw Smith at the time of the arrest and were, or should have been aware, of Smith's need for medical attention. Additionally, the plaintiffs contend that Louge had arrested Smith for DUIs on other occasions and thus knew that Smith's condition needed medical attention and monitoring.

Defendants Thornhill and Hollins were the jailers on duty the night Smith died and the plaintiffs allege that they were aware of his serious condition and that they failed to properly monitor him.  It is undisputed that there was only one jailer on duty at

---

[2] The plaintiffs originally sued these defendants in their individual capacities as well, but the court granted them qualified immunity in a separate opinion.

a time during Smith's incarceration and that the jailer also acted as the dispatcher and was unable to leave his dispatching duties to check on prisoners in the jail. The job of monitoring prisoners was left up to trustys, who passed information about the prisoner's condition to the jailer/dispatcher.

The plaintiffs allege that Sheriff Stringer failed to implement and enforce suitable policies and procedures for the detection and prevention of suicide and for accommodating the medical and psychiatric needs of pretrial detainees. They also assert that Stringer failed to implement adequate hiring, firing, training, staffing and supervisory procedures. Sheriff Stringer admitted in his deposition that the jailers were not given any instructions about how often to observe inmates, while also admitting that according to ACA guidelines, which governed the Marion Walthall Facility because it was an accredited jail, the jailers were supposed to check each inmate every thirty minutes. However, the old Marion County Jail was not accredited according to Sheriff Stringer and the jail personnel were apparently not required to check on the prisoners.

The plaintiffs allege that Smith repeatedly asked for help while he was incarcerated. They assert that Smith told trusty Darryl Stogner that he was "very upset" at having received another felony DUI and that he would never get out. Smith was also escorted from his cell and assisted in the use of the phone by trusty Ozelle Johnson. At around 9:00 P.M. Smith began banging on his cell and requested to be transferred to another cell where he could have a bed. Stogner relayed the request to Thornhill who stated that Smith would have to wait another hour. Stogner relayed a second request from Smith to Thornhill to be moved at 9:45 P.M. Thornhill also denied this request and told Stogner to tell Smith to go to sleep. Smith was never seen alive again.

At around 1:15 A.M., Stogner requested the keys to Smith's cell from Hollins, who was then on duty.  Stogner stated that he was concerned that Smith had been so quiet after being so upset and he appeared to be asleep on the floor by his cell door.  Hollins gave the keys to Stogner, who discovered that Smith had hung himself.  Hollins called for an ambulance and then two other deputies arrived on the scene.   As stated above, however, no effort was made to remove the shoelace from Smith's neck or to revive him until the paramedics arrived some fifteen to twenty minutes after Stogner discovered Smith.

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence

is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.

*Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting

*Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **STANDARD FOR PRETRIAL DETAINEES**

The decedent was a pretrial detainee, and as such, the Fifth Circuit has instructed that "[t]he constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996)(citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).  In *Hare* the Fifth Circuit also held "that both medical care and failure-to-protect cases should be treated the same for purposes of measuring constitutional liability."  Further,  when "a pretrial detainee's claim is based on a jail official's episodic acts or omissions, . . . the proper inquiry is whether the official had a culpable state of mind in acting or failing to act[,]" and that "a standard of deliberate indifference [is] the measure of culpability for such episodic acts or omissions."  74 F.3d at 643.  Restated, the Court held "that the episodic act or omission of a state jail official does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs."  *Id.* at 647-48.

Inmate suicide implicates both the State's duty to provide medical care and its duty to provide protection from harm, albeit self-inflicted.  *See Hare*, 74 F.3d at 644.  Certainly, an inmate's suicidal tendencies are serious mental health and safety risks to which jailers can not be deliberately indifferent.  *See Flores v. County of Hardeman*,

124 F.3d 736, 738 (5th Cir. 1997).

## **FAILURE TO TRAIN OR SUPERVISE**

The plaintiffs have alleged a custom or policy of inadequate training, supervision, discipline, screening, staffing or hiring on the part of Marion County which led to the alleged constitutional deprivations purportedly visited upon the plaintiffs' decedent. To establish a claim under § 1983 for failure to train or supervise, "the plaintiff must show that: 1) the supervisor either failed to supervise or train the subordinate official; 2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and 3) the failure to train or supervise amounts to deliberate indifference". *Estate of Davis v. City of North Richland Hills*, 406 F. 3d 375, 381 (5th Cir. 2005). To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is "obvious and obviously likely" to result in a constitutional violation. *Id.* at 381.

The Fifth Circuit has declined to find governmental liability for failure to train where the individual law enforcement officers successfully completed the minimum training mandated by state law. *Benavides,* 955 F. 2d at 973. To support a failure to train claim, a plaintiff must show that any failure to train by the governmental entity reflects a "deliberate" or "conscious" choice to endanger constitutional rights. *City of Canton Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). An adequate training program must "enable officers to respond properly to the usual and recurring situations with which they must deal." *Benavides,* 955 F. 2d at 973.

However, under Supreme Court precedent, a single episodic event of unconstitutional activity is not sufficient to impose liability unless it is shown that the incident was caused by existing unconstitutional policies attributable to the policy makers.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985).

## SECTION 1983 LIABILITY

Section 1983 creates a private right of action for redressing violations of federal law by those acting under color of state law.  *See Migra v. Warren Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984).  The statute provides:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983.  Thus, the plaintiffs must establish, as a prerequisite to maintaining a Section 1983 claim, that the defendants were acting under color of state law, and that while acting under color or state law, they violated rights of the plaintiffs that are protected by the United States Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535; 101 S.Ct. 1908, 1912; 68 L.Ed.2d 420 (1981); *Augustine v. Doe*, 740 F.2d 322, 324 (5th Cir. 1984).

## SECTION 1983 AND MUNICIPAL LIABILITY

The plaintiffs have filed this action against Charles 'Bumper" Bryant, Solomon Ray Hollins, Clarence Louge, Delano 'Butch' Thornhill and Sheriff Richard Stringer in

their official capacities. The defendants' motion goes to plaintiffs' complaint against these defendants in their official capacities as well as to Marion County. The action against the individual defendants in their official capacities is, in essence, against Marion County, of which the defendants are agents. *Monell* 436 U.S. at 690, n. 55; *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed. 2d 662 (1974); *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980). "An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

The Fifth Circuit discussed the standard to govern the imposition of municipal liability in Section 1983 actions in *Webster v. Houston*, 735 F.2d 838, 841 (5th Cir. 1984):

> A municipality is liable under Section 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy. Official policy is:
>
> > 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority;
> >
> > or
> >
> > 2. A persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policymaking authority. Actions of officers or employees of a municipality do not render the municipality liable under Section 1983 unless they execute official policy as above defined.

"The policy is that of the city, however, where it is made by an official under authority to do so given by the governing authority." *Bennett v. Slidell*, 728 F.2d 762,

769 (5th Cir. 1984).  "Policymakers act in the place of the governing body in the area of their responsibilities; they are not supervised except as to the totality of their performance." *Id.* at 769.

As stated previously, in order to find a municipality liable in a Section 1983 action, the constitutional deprivation must result from the implementation or execution of a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.  This includes customs and usages which have become so persistent and widespread as to be permanent and well settled so as to constitute a custom or usage with a force of law.  *See Monell v. Dept. of Social Services*, 436 U.S. 658, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978).  Further, "[a] failure to adopt a policy rises to the level of deliberate indifference 'when it is obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights.'" *Evans v. City of Marlin, Tex.*, 986 F.2d 104, 108 (5th Cir. 1993)(quoting *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir.1992)).

The plaintiffs allege that Sheriff Stringer, as a policymaker for Marion County, adopted a custom of allowing his deputies complete discretion in how to run the day to day operations of the jail and such led to a violation of the constitutionally protected rights of Smith.  Thus, according to the plaintiffs, Marion County continually practiced customs of deliberate indifference towards inmates in violation of the Constitution of the United States.  The undisputed testimony of Officer Hollins states that Marion County customarily allowed its officers' unwarranted discretion in determining who should be placed in observation rooms rather than the drunk tank.  It was also purely the officer's discretion to determine whether or not the shoelaces should be removed from an

-
-

inmate's shoes before placing him within the cell.  Once in the cell, the overwhelming testimony also demonstrates that the officers had full discretion over whether to monitor the inmates as there was no policy or custom of checking on the inmates in any certain time intervals.  The officers did not rely on the inmate to inform them of when he or she needed medical attention, the officer was not the first contact.  The trustys who worked at the jail relayed the question to the officers and the trustys were responsible for periodically checking the inmates.

The law is well settled that in certain circumstances, the constitution imposes upon the state affirmative duties of care and protection with respect to particular individuals.  *DeShaney v. Winnebago County Dep't of Soc. Sev's*, 489 U.S. 189, 198 (1989).  Specifically, when a person is taken into custody and held against his will, "[w]hether the State's obligation is cast in terms of a duty to provide medical care or protection from harm, its ultimate constitutional duty is "to assume some responsibility for [the] safety and general well-being" of persons whose state occasioned confinement renders them unable to fend for themselves.  *Hare*, 74 F.3d at 644 (quoting *DeShaney,* 489 U.S. at 200).

A careful review of the evidence presented convinces the court that there are genuine issues of material fact as to whether or not Marion County, through the official acts of Sheriff Stringer and its policymakers, displayed deliberate indifference to the serious medical needs of Theodore Smith, both during his incarceration and after discovering that he had hung himself.  As the Fifth Circuit has held,

> Under the *Bell v. Wolfish* standard, the defendants had a duty, at a minimum, not to be deliberately indifferent to [Smith's] serious medical needs. A serious medical need may exist for psychological or psychiatric treatment, just as it may exist for physical ills. A psychological or

13

> psychiatric condition can be as serious as any physical pathology or injury, especially when it results in suicidal tendencies. And just as a failure to act to save a detainee from suffering from gangrene might violate the duty to provide reasonable medical care absent an intervening legitimate government objective, failure to take any steps to save a suicidal detainee from injuring himself may also constitute a due process violation under *Bell v. Wolfish*.
>
> . . .
>
> The Supreme Court held that an individual instance of negligence on the part of a jailor does not violate the due process clause of the Fourteenth Amendment, for that clause was intended to secure the individual from the arbitrary exercise of the power of government. But the clause does protect against arbitrariness and abuse of power, as distinguished from negligence or lack of due care.
>
> . . .
>
> [T]o the extent that the claim rests on the detention center's deliberate and systematic lack of adequate care for detainees, it alleges the kind of arbitrariness and abuse of power that is preserved as a component of the due process clause in *Daniels*.

*Partridge v. Two Unknown Police Officers of City of Houston, Tex.*, 791 F.2d 1182, 1187 (5th Cir. 1986). The court therefore finds that both motions for summary judgment should be denied.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#145]** filed on behalf of the plaintiffs and the Cross-Motion for Summary Judgment **[#147]** filed on behalf of Charles 'Bumper" Bryant, Solomon Ray Hollins, Clarence Louge, Delano 'Butch' Thornhill and Sheriff Richard Stringer in their official capacities and Marion County, Mississippi are Denied. A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 29th day of August, 2007.

                                            *s/Keith Starrett*
                                            UNITED STATES DISTRICT JUDGE